1  **Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
       Direct Dial:  (503) 802-2013
2      Facsimile:    (503) 972-3713
       E-Mail:       al.kennedy@tonkon.com
3  **Timothy J. Conway**, OSB No. 851752
       Direct Dial:  (503) 802-2027
4      Facsimile:    (503) 972-3727
       E-Mail:       tim.conway@tonkon.com
5  **Michael W. Fletcher**, OSB No. 010448
       Direct Dial:  (503) 802-2169
6      Facsimile:    (503) 972-3869
       E-Mail:       michael.fletcher@tonkon.com
7  **Ava L. Schoen**, OSB No. 044072
       Direct Dial:  (503) 802-2143
8      Facsimile:    (503) 972-3843
       E-Mail:       ava.schoen@tonkon.com
9  **TONKON TORP** LLP
   1600 Pioneer Tower
10 888 S.W. Fifth Avenue
   Portland, OR  97204
11
       Attorneys for Debtor
12

13                 UNITED STATES BANKRUPTCY COURT

14                      DISTRICT OF OREGON

15 | In re | Case No. 13-64561-fra11 |

16 | C & K Market, Inc., | **DEBTOR'S APPLICATION FOR ORDER TO EMPLOY THE FOOD** |

17 | Debtor. | **PARTNERS, LLC AS FINANCIAL ADVISORS FOR DEBTOR** |

18

19          C & K Market, Inc., debtor and debtor-in-possession ("Debtor"), moves this

20 Court for entry of an order approving the employment of The Food Partners, LLC ("Food

21 Partners") as financial advisor for Debtor.  Debtor makes this Application pursuant to

22 11 U.S.C. § 327 and Federal Rule of Bankruptcy Procedure 2014.  In support of this Motion,

23 Debtor incorporates the statements contained in the Declaration of Edward Hostmann in

24 Support of First Day Pleadings ("First Day Declaration") filed contemporaneously herewith,

25 and further respectfully states as follows:

26

**Page 1 of 5** -  DEBTOR'S APPLICATION FOR ORDER TO EMPLOY THE FOOD PARTNERS,
               LLC AS FINANCIAL ADVISORS FOR DEBTOR

1.     On November 19, 2013 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

2.     Debtor has continued in possession of its property and is continuing to operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of Title 11 of the United States Code.

3.     No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed in Debtor's case.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.     C & K is a family owned grocery store company headquartered in Brookings, Oregon.  Ray Nidiffer founded the company in 1956 with a single store in Brookings.  Over the next 50 years, the Nidiffer family and its employees grew the company to a chain of 60 stores, operating mostly in small rural communities, with 41 stores in Oregon and 19 stores in northern California.  The stores operate under the banners Ray's Food Place, Shop Smart and C & K Market ("Market").  Market employs over 2,300 employees, approximately 57% of whom are full-time.  Market has an average biweekly payroll in excess of $2,700,000 and provides family health insurance for all its full-time employees.

6.     Debtor desires to retain and employ Food Partners as financial advisor in this Chapter 11 case, pursuant to Section 327 of the Code, in accordance with the terms of the Financial Advisory Services Agreement between Debtor and Food Partners (the "Agreement,") a copy of which is attached hereto as **Exhibit 1**.

7.     Food Partners has extensive experience providing financial advisory services for companies in the food industry, both in and out of bankruptcy.  Food Partners

**Page 2 of 5** - DEBTOR'S APPLICATION FOR ORDER TO EMPLOY THE FOOD PARTNERS, LLC AS FINANCIAL ADVISORS FOR DEBTOR

1  has been involved in working on the prepetition restructuring of Debtor's business, and has a

2  thorough understanding of Debtor's businesses and the issues involved in this case.

3          8.      As more fully set forth in the Agreement, the services Food Partners

4  will provide include the following: (a) financial analysis, modeling, reports and testimony, if

5  necessary and (b) advising and assisting with the possible sale to one or more third parties of

6  certain of Debtor's retail grocery stores and related assets.[1]

7          9.      The Food Partners professionals who will be primarily responsible for

8  providing these services are as follows:

9              Matthew Morris
              David Schoeder
10             James Floyd
              Carlos Garcia
11             Douglas Herman
              Jesica Mitchell
12             Maureen Bates

13

14         10.     The Food Partners professionals included in this engagement have

15  varied their rate based on the geographic location of this bankruptcy case and have agreed to

16  a variation from their standard or customary billing arrangements for this engagement.  Food

17  Partners typically bills its clients at rates between $295 and $650 per hour.  Debtor will pay

18  Food Partners for its services at the blended rate of $495 per hour.  This blended billing rate

19  is the same effective rate that it billed Debtor prepetition.

20         11.     Pursuant to the Agreement and subject to Court approval, in the event

21  a sale to one or more third parties closes during the term periods as set forth in the

22  Agreement, Debtor will pay Food Partners a transaction fee equal to the greater of $50,000

23  per store sold or 2.5% of the total consideration received by Debtor.

24

25

26  _____

[1] Debtor does not seek authority for Food Partners to provide or be compensated for
valuation services, as such services are defined and described in the Agreement.

**Page 3 of 5** -   DEBTOR'S APPLICATION FOR ORDER TO EMPLOY THE FOOD PARTNERS,
                     LLC AS FINANCIAL ADVISORS FOR DEBTOR

12.     Food Partners will maintain detailed, contemporaneous time records of expenses incurred with the rendering of the services described above by category and nature of services rendered.

13.     As disclosed in the Rule 2014 Verified Statement for Professional filed herewith, prior to the filing of the bankruptcy petition, Food Partners received a retainer from Debtor and applied a portion of that retainer for prepetition services and costs rendered prior to the filing of the bankruptcy.  The remaining balance is held as a retainer.

14.     Within the 12-month period preceding the Petition, Food Partners provided services to Debtor or its affiliates.  The total cost of such services prior to the filing of the Petition, and payments for those services, are disclosed on the attached Rule 2014 Verified Statement for Proposed Professional.

15.     To the best of Debtor's knowledge, Food Partners does not have any connection with Debtor, its creditors, any other party-in-interest, or their respective attorneys or accountants, except as stated in the Rule 2014 Verified Statement of Proposed Professional.

16.     A proposed Order Authorizing Employment of The Food Partners, LLC as Financial Advisors for Debtor is attached as **Exhibit 2**.

For the reasons stated in this Application, Debtor requests that the Court enter an order authorizing it to employ Food Partners as financial advisors of Debtor in this

* * *

* * *

* * *

* * *

* * *

* * *

* * *

**Page 4 of 5** -   DEBTOR'S APPLICATION FOR ORDER TO EMPLOY THE FOOD PARTNERS, LLC AS FINANCIAL ADVISORS FOR DEBTOR

1          Chapter 11 case as of the Petition Date, with compensation and

2  reimbursement of expenses to be paid as an administrative expense as set forth herein.

3          DATED this 20th day of November, 2013.

4                   TONKON TORP LLP

5

6              By */s/ Ava L. Schoen*
                      Albert N. Kennedy, OSB No. 821429

7                      Timothy J. Conway, OSB No. 851752
                      Michael W. Fletcher, OSB No. 010448

8                      Ava L. Schoen, OSB No. 044072
                      Attorneys for Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 5 of 5** -  DEBTOR'S APPLICATION FOR ORDER TO EMPLOY THE FOOD PARTNERS,
                LLC AS FINANCIAL ADVISORS FOR DEBTOR

# EXHIBIT 1

## FINANCIAL ADVISORY SERVICES AGREEMENT

**THE FOOD**
**PARTNERS**
www.thefoodpartners.com

5335 Wisconsin Avenue, NW
Suite 410
Washington, DC 20015

T 202.371.0004
F 202.589.0433

## FINANCIAL ADVISORY SERVICES AGREEMENT

THIS AGREEMENT ("**Agreement**"), dated September __, 2013, confirms that **C&K MARKET, INC.**, with its principal place of business at 615 5th Street, Brookings, OR 97415 and its subsidiaries and affiliates ("**Client**"), has retained **THE FOOD PARTNERS, LLC**, a Delaware registered limited liability company with its principal offices at 5335 Wisconsin Avenue, NW, Suite 410, Washington, DC 20015 ("**TFP**"), for the purposes described in this Agreement in accordance with the terms and conditions specified herein, and TFP has agreed to such engagement.

1. **Purpose of Engagement.** TFP will render strategic and financial advisory services as outlined below (the "**Services**") to Client in connection with (i) financial analysis, modeling, reports and testimony (if applicable), (ii) a valuation and (iii) the possible sale (the "**Transaction(s)**") to one or more third-parties (the "**Buyer(s)**") of Client and/or its retail grocery stores and related property, assets and liabilities (the "**Stores**"). TFP will be Client's exclusive financial advisor with respect to the marketing and sale of Client and/or its Stores and Client will forward to TFP all leads and inquiries.

Among other services, TFP will:

- Review, assess, benchmark and analyze all aspects of Client and its Stores, including, but not limited to, financial statements (including projections), competition, capital requirements, supply chain, store divestitures, lease mitigation and plans.

- Assist Client prepare reports and analysis for various constituencies and stakeholders.

- Provide expert testimony, if applicable.

With respect to the valuation, TFP will:

- By October __, 2013, prepare a range of value analysis (the "**Valuation**") in form and substance reasonably satisfactory to Client.

With respect to the Transactions, TFP will:

- Advise and assist Client in developing a strategy for accomplishing the Transactions.

- Advise and assist Client in developing a list of prospective Buyers (the "**Transaction Call List**"). No third-party or prospective Buyer will be contacted by TFP without Client's prior approval and no information will be provided to such third-party or prospective Buyer without TFP first causing such third-party to execute a confidentiality agreement approved by Client.

- Prepare and distribute select confidential information to prospective Buyers.

- Provide Client with progress reports regarding the status of the Transactions.

- Facilitate and respond to questions raised by prospective Buyers (in consultation with Client, as appropriate). TFP will not contact any Client employee without the prior approval of Client.

- Coordinate store visits by prospective Buyers, all in accordance with procedures mandated by Client.

- Coordinate due diligence to be performed by prospective Buyers.

- Assist Client in developing, hosting and maintaining a due-diligence data room for the Transactions.

- Assist Client in reviewing, structuring and negotiating all agreements with prospective Buyers.

- Advise Client with respect to Transactions with prospective Buyers.

- Assist Client in closing the Transactions.

2. **Period of Engagement**. TFP's engagement will run from the date of this Agreement for a period of one (1) year. Notwithstanding the foregoing, this engagement may be terminated by either party, with or without cause, upon ten (10) days written notice to that effect to the other party.

3. **TFP's Compensation**. Client will pay to TFP the following:

   (a) **Valuation**. Client will pay to TFP a non-refundable fee of forty-five thousand dollars ($45,000) for the Valuation, of which twenty-five thousand dollars ($25,000) is due and payable upon execution of this Agreement, and the remaining twenty thousand dollars ($20,000) is due and payable upon the timely delivery of the Valuation to Client.

   (b) **Hourly Fees**. Excluding Services for the Valuation, Client will pay to TFP for its Services at the rate of four hundred and ninety five dollars ($495) per hour (the "**Hourly Fees**"). The Hourly Fees will be billed to Client on a monthly basis and paid upon receipt.

   (c) **Transaction Fee**. In the event a Transaction closes during the term of this Agreement or in the event a Transaction closes and the Tail Fee (as defined below in subparagraph 3(d)) is due and owing, Client will pay to TFP a transaction fee equal to the greater of (i) fifty thousand dollars ($50,000) per store sold or (ii) two and one-half percent (2.5%) of the Total Consideration received by Client from the Buyer(s) (the "**Transaction Fee**").

   Total Consideration equals (i) the total amount of Consideration received by Client and/or its shareholders for the stock or assets sold (including, but not limited to, equipment, licenses, goodwill, inventory and real estate), plus (ii) the liabilities assumed, converted or forgiven by the Buyer(s) (including the present value of lease liabilities

through their base terms, using an eight percent (8.0%) discount rate),[1] plus (iii) the present value of the rent to be paid by the Buyer(s) on owned real estate retained by Client and/or its shareholders through the longer of ten (10) years or the leases' base terms, using an eight percent (8.0%) discount rate. Consideration includes, but is not limited to, cash, exchanged assets, deferred monies, consulting and/or non-compete payments. Any Consideration not paid at closing (including deferred monies) will be valued for the calculation of TFP's Transaction Fee on a present value basis using an eight percent (8.0%) discount rate.

Client and TFP acknowledge that the Transactions may be consummated through multiple closings with different Buyers and that a Transaction Fee will be paid by Client to TFP for each respective Transaction at such closing.

Any monies owed under this paragraph will be paid by Client to TFP in readily available funds on the day the closing of any Transaction occurs.

**(d) Tail Fee.** The period commencing on the expiration or earlier termination date of this Agreement and expiring twelve (12) months thereafter is referred to herein as the "**Tail Period.**" If, at any time during the Tail Period, a Transaction is consummated between Client and a third-party, then Client will pay TFP the Transaction Fee otherwise due under subparagraph 3(c) above (the "**Tail Fee**"). However, to qualify for the Tail Fee, (i) such third-party must have been included on TFP's Transaction Call List, (ii) such third-party must been contacted by TFP during the term of this Agreement and (iii) such contact must have been documented in progress reports to Client.

Any monies owed under this paragraph will be paid by Client to TFP in readily available funds on the day the closing of any Transaction occurs.

4. **Reimbursement of Expenses.** In addition to any fees that may be payable to TFP and regardless of whether any Transaction is proposed or consummated, Client will reimburse TFP on a monthly basis for all reasonable out-of-pocket disbursements incurred in connection with any actual or proposed Transaction or otherwise arising out of TFP's engagement, including all travel and production costs. Client will remain liable for reimbursement of out-of-pocket expenses incurred by TFP in the course of providing Services, including out-of-pocket expenses incurred at Client's request after termination or expiration of this Agreement. Notwithstanding the foregoing, any out-of-pocket expenses in excess of the aggregate amount of five thousand dollars ($5,000) must receive prior approval from Client.

5. **Announcement.** At the conclusion of the Transaction(s), subject to Client's approval, which will not be unreasonably withheld, TFP reserves the right to publish an announcement of its role as Client's strategic and financial advisor with respect to this engagement. In addition, if Client issues a press release regarding the Transaction(s), a reference will be made to TFP's role as Client's advisor.

---

[1] If Client becomes a Debtor in a bankruptcy case, the present value amounts for lease liabilities assumed will be limited to the maximum claim amount the lessor could have in a bankruptcy pursuant to 11 USC §503(b)(6).

6. **Bankruptcy.** The parties acknowledge that if Client becomes a debtor in a bankruptcy case, TFP's engagement by Client in such bankruptcy, and any compensation to be paid to TFP by Client, will be subject to review and approval by the Bankruptcy Court.

7. **Exhibit A (Standard Terms and Conditions).**  Exhibit A is incorporated herein by this reference.

The parties have caused this Agreement to be executed by their duly authorized representatives as of the Date written above.

C&K MARKET, INC.

By: _____

Name: EDWARD HOSTMANN

Title: CRO

THE FOOD PARTNERS, LLC

By: _____

Name: Matthew S. Morris

Title: *Principal*

THE FOOD PARTNERS, LLC

By: _____

Name: David W. Schoeder

Title: *Principal*

# EXHIBIT A
## STANDARD TERMS AND CONDITIONS

**1. Accuracy of Client Data.** Client recognizes and confirms that in performing its duties pursuant to this Agreement, TFP will be using and relying on data, material and other information (the "**Information**") furnished by Client and its employees and representatives and on information available from generally recognized public sources without any independent investigation or verification thereof. Accordingly, TFP assumes no responsibility for the accuracy and completeness of the Information. In rendering its Services hereunder, TFP will not make an appraisal or independent valuation of any of the assets or liabilities of Client. Client agrees that any Services will be based entirely upon Information supplied by Client or available from public sources. Client will exercise reasonable care to ensure that Information is complete and accurate in all material respects, and not materially misleading, and Client will be solely responsible for the accuracy and completeness of any such Information used, summarized or presented in any Services. Without limiting the foregoing, TFP will be neither responsible for nor liable to any party for any representations, assertions or statements based on the Information or reasonably derived therefrom if such representations, assertions or statements prove to be false, inaccurate, deceptive, misleading or incomplete.

**2. Confidentiality.** Unless required by law or applicable legal process, any advice rendered by TFP pursuant to this Agreement may not be disclosed publicly by TFP or Client without the other party's prior written consent or used for any purposes not related to Client's participation in the Services.

**3. Confidential and Proprietary Information.** "Confidential and Proprietary Information" means all documents, software, reports, data, records, forms and other material (a) obtained by TFP from Client in the course of performing the Services: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by Client to TFP; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential or (b) developed or prepared by TFP based upon information described in (a). Confidential and Proprietary Information does not include information which: (i) is already known to TFP at the time of disclosure by Client; (ii) is or becomes publicly known through no wrongful act of TFP; (iii) is independently developed by TFP without benefit of Client's Confidential and Proprietary Information; or (iv) is received by TFP from a third-

party without restriction and without a breach of an obligation of confidentiality. All Confidential and Proprietary Information of Client remains the property of Client and will be maintained in confidence by TFP, will not be used by TFP for any purpose other than to provide the Services under this Agreement, and will not be disclosed to any third-party, except as provided herein, without Client's prior written consent, unless required by applicable law or legal process. At the conclusion of the Services, TFP will, upon Client's request, return to Client all Confidential and Proprietary Information of Client in its possession or, upon Client's request, TFP will destroy all Confidential and Proprietary Information of Client in its possession, subject to TFP's need to preserve its interests hereunder. Upon written request by Client, TFP will certify the destruction of all Confidential and Proprietary Information of Client, clearly identifying any such information retained by TFP as necessary to preserve its interests hereunder. The confidentiality restrictions and obligations imposed by this section will terminate two (2) years after the expiration or termination of this Agreement.

**4. Limitations on Use.** Client expressly acknowledges that all information and advice provided by TFP to Client in connection with TFP's engagement are intended solely for the benefit and use of Client (including its management, directors, shareholders and attorneys) in considering the Services to which they relate, and Client agrees that, except as required by law, no such information or advice will be used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor will any public reference to TFP be made by Client (or such persons) without the prior written consent of TFP, which will not be unreasonably withheld. Client specifically agrees, without limiting the generality of the foregoing, that it will not use any information or advice provided by TFP to Client in any tax matter, proceeding or audit nor in any matter having to do with the listing or public sale of securities unless TFP has agreed to such use beforehand, in writing.

**5. Indemnification of TFP.**

(a) In the event of a claim by a third-party relating to services under the Agreement to which these Standard Terms and Conditions are attached, Client will indemnify TFP and its personnel from all such claims, liabilities, costs and expenses, except to the extent determined to have resulted from the

intentional or deliberate misconduct or gross negligence by TFP.

(b) TFP will have no liability to Client for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by Client to TFP under this Agreement. In no event shall TFP be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort (including, without limitation, negligence) or otherwise.

(c) In the event any third-party asserts a claim against TFP or its personnel for which a right of indemnification is asserted under subparagraph (a) above, Client shall, at its choice, either engage counsel to defend TFP and/or its personnel or shall be responsible for the current payment of costs and expenses TFP and/or its personnel incur to defend against such claim.

6.    **Independent Contractor.** Nothing in this Agreement will be deemed to constitute TFP or Client the agent of the other. Neither TFP nor Client be or become liable or bound by any representation, act or omission whatsoever of the other.

7.    **Not a Registered Broker-Dealer**. TFP is not a registered broker-dealer and will not be providing services to Client as a broker-dealer. All services provided by TFP will be strictly as an advisor to Client.

8.    **Nonassignability**. This Agreement and all rights, liabilities and obligations hereunder will be binding upon and inure to the benefit of each party's successors, but neither party will assign, transfer or subcontract this Agreement or any of its obligations hereunder without the other party's express, prior written consent.

9.    **Severability.** In the event that any term or provision of this Agreement is held to be invalid, void or unenforceable, then the remainder of this Agreement will not be affected, impaired or invalidated, and each such term and provision of this Agreement will be valid and enforceable to the fullest extent permitted by law.

10.    **Governing Law.** Regardless of the place of execution or performance, this Agreement and any related indemnification and confidentiality agreements between the parties will be deemed made in Delaware.

11.    **Integration.** This Agreement constitutes the entire agreement of the parties with respect to its subject matter and supersedes all prior and contemporaneous representations, proposals, discussions, and communications, whether oral or in writing. This Agreement may be modified only in writing and will be enforceable in accordance with its terms when signed by each of the parties hereto.

12.    **Counterparts.** This Agreement may be executed simultaneously in two or more counterparts, each of which will be deemed an original, but all of which constitute one and the same instrument.

13.    **Third-Party Beneficiaries.** This Agreement is made solely for the benefit of Client, TFP, other Indemnified Parties and their respective successors and assigns, and no other person will acquire or have any right under or by virtue of this Agreement.

14.    **No Conflict of Interest.** Client recognizes that TFP may from time to time throughout the term of this Agreement provide services to companies that are in competition with Client. Client hereby agrees that this Agreement does not limit TFP's ability to provide such services, and that TFP's providing of such services does not represent a breach of this Agreement or represent a conflict of interest for TFP in the context of this Agreement. This paragraph does not limit TFP's confidentiality obligations under this Agreement.

15.    **Notices.** All notices, requests and demands hereunder will be in writing and will be deemed to have been duly given (a) upon personal delivery, (b) five (5) days after being mailed by registered or certified mail, return receipt requested or (c) one (1) business day after being sent by nationally recognized overnight courier.

# EXHIBIT 2

## PROPOSED FORM OF ORDER

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In re

C & K Market, Inc.,

                    Debtor.

Case No. 13-64561-fra11

**ORDER GRANTING DEBTOR'S APPLICATION TO EMPLOY FINANCIAL ADVISOR (THE FOOD PARTNERS, LLC)**

THIS MATTER having come before the Court upon Debtor's Application for Order to Employ The Food Partners, LLC as Financial Advisors for Debtor (the "Application") [Dkt. #_____]; the Court having reviewed the Application, the Rule 2014 Verified Statement for Professional, and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Application at a hearing before the Court (the "Hearing"); and the Court having found that (1) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (2) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (3) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (4) notice of the Application and the Hearing was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Application is in the best interests of Debtor, its estate and the creditors; and good and sufficient cause having been shown;

**Page 1 of 2** - ORDER GRANTING DEBTOR'S APPLICATION TO EMPLOY FINANCIAL
              ADVISOR (THE FOOD PARTNERS, LLC)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

IT IS HEREBY ORDERED THAT:

1.      The Application is granted.

2.      In accordance with Bankruptcy Code Section 327(a), Debtor is authorized to retain and employ Food Partners as of the Petition Date to perform the services set forth in the Application, on the terms set forth in the Application.

3.      Food Partners' compensation shall be subject to Court approval in accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, including any procedures that may be established under Local Rule 2016-1.

# # #

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

Presented by:

TONKON TORP LLP


By _____
     Albert N. Kennedy, OSB No. 821429
     Timothy J. Conway, OSB No. 851752
     Michael W. Fletcher, OSB No. 010448
     Ava L. Schoen, OSB No. 044072
     888 S.W. Fifth Avenue, Suite 1600
     Portland, OR  97204-2099
     Telephone:   503-221-1440
     Facsimile:   503-274-8779
     E-mail:       al.kennedy@tonkon.com
                      tim.conway@tonkon.com
                      michael.fletcher@tonkon.com
                      ava.schoen@tonkon.com
     Attorneys for Debtor

cc:     List of Interested Parties

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

In re                                         )
                                              )  Case No. _____
                                              )
                                              )  RULE 2014 VERIFIED STATEMENT
Debtor(s)                                     )  FOR PROPOSED PROFESSIONAL

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1. The applicant is not a creditor of the debtor except:

2. The applicant is not an equity security holder of the debtor.

3. The applicant is not a relative of the individual debtor.

4. The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5. The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6. The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7. The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8. The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9. The applicant is not a person in control of the debtor.

10. The applicant is not a relative of a director, officer or person in control of the debtor.

11. The applicant is not the managing agent of the debtor.

12. The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13. The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

14. The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15. Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:

16. The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)).  Please list and explain the relationship between the debtor and the affiliate:

17. The applicant is not an affiliate of the debtor.

18. Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):

19. The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20. List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:

21.  List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed.  Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee.  Only name those guarantees now outstanding or outstanding within the last 18 months:

22.  List the names of any affiliates which have a debtor-creditor relationship with the debtor.  Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any.  Only name those loans now outstanding or paid off within the last 18 months:

23.  List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21.  List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22.  Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

24.  List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

I verify that the above statements are true to the extent of my present knowledge and belief.

_____
Applicant

1                         CERTIFICATE OF SERVICE

2          I hereby certify that the foregoing **DEBTOR'S APPLICATION FOR ORDER TO EMPLOY THE FOOD PARTNERS, LLC AS FINANCIAL ADVISORS FOR DEBTOR** as served on the parties indicated as "ECF" on the attached List of Interested Parties by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below.

         In addition, the parties indicated as "Non-ECF" on the attached List of Interested Parties were served by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to each party's last-known address and depositing in the U.S. mail at Portland, Oregon on the date set forth below.

         DATED this 20th day of November, 2013.

                     TONKON TORP LLP

                By /s/ Ava L. Schoen
                    Albert N. Kennedy, OSB No. 821429
                    Timothy J. Conway, OSB No. 851752
                    Michael W. Fletcher, OSB No. 010448
                    Ava L. Schoen, OSB No. 044072
                    Attorneys for Debtor

**Page 1 of 2** -   CERTIFICATE OF SERVICE

## LIST OF INTERESTED PARTIES

### *In re C & K Market, Inc.*
### U.S. Bankruptcy Court Case No. 13-64561-fra11

### ECF PARTICIPANTS

- RICHARD T ANDERSON rick@andersonmonson.com, lisa@andersonmonson.com
- TIMOTHY J CONWAY tim.conway@tonkon.com, nancy.kennedy@tonkon.com
- MICHAEL W FLETCHER michael.fletcher@tonkon.com, leslie.hurd@tonkon.com;andy.haro@tonkon.com
- DAVID A FORAKER david.foraker@greenemarkley.com, joyce.chartrand@greenemarkley.com
- THOMAS A HUNTSBERGER tom@tahpc.com
- GREGG D JOHNSON gdj@aterwynne.com, jmh@aterwynne.com
- ROBERT B KAPLAN rbk@jmbm.com
- ALBERT N KENNEDY al.kennedy@tonkon.com, leslie.hurd@tonkon.com;andy.haro@tonkon.com
- JEFFREY C MISLEY jeffm@sussmanshank.com, ecf.jeffrey.misley@sussmanshank.com
- TERESA H PEARSON teresa.pearson@millernash.com, lisa.conrad@millernash.com;brenda.hale@millernash.com
- AVA L SCHOEN ava.schoen@tonkon.com, larissa.stec@tonkon.com
- US Trustee, Eugene USTPRegion18.EG.ECF@usdoj.gov

### NON-ECF PARTICIPANTS

**SECURED CREDITORS**

U.S. Bank N.A.
c/o Michael R. Stewart
Faegre Baker Daniels LLP
90 South Seventh St. #2200
Minneapolis, MN 55402-3901

Banc of America
  Leasing & Capital LLC
2059 Northlake Parkway 4 South
Tucker, GA 30084

Dell Financial Services LLC
Mail Stop-PS2DF-23
One Dell Way
Round Rock, TX 78682

James D. Gillespie
28274 S. Fork Rd.
Dayville, OR 97825

Greatway Center Property LLC
8816 E. Evans Creeks
Rogue River, OR 97537

Green & Frahm
941 Delsie Dr.
Grants Pass, OR 97527

Komlofske Corp.
1535 E. 3rd St.
Prineville, OR 97754

Ken and Lynda Martin
80380 Torreon Way
La Quinta, CA 92253

Protective Life
2801 Highway 280 South
Birmingham, AL 35202

**TOP 20 UNSECURED CREDITORS**

Endeavour Structured Equity &
  Mezzanine Fund I, LP
c/o Pamela K. Webster
Buchalter Nemer
1000 Wilshire Blvd. # 1500
Los Angeles, CA 90017-2457

THL Credit, Inc.
Pamela K. Webster
Buchalter Nemer
1000 Wilshire Blvd. #1500
Los Angeles, CA 90017-2457

Supervalu
101 Jefferson Ave. So
Hopkins, MN 55343

Western Boxed Meat Inc.
2401 NE Argyle St.
Portland, OR 97211

United Salad Co
8448 NE 33rd Dr. #100
Portland, OR 97211-2163

Umpqua Dairy Products
6823 NE 59th Pl
Portland, OR 97218

Bigfoot Beverages
86776 McVay Hwy.
Eugene, OR 97405

Core-Mark Intl
395 Oyster Point Blvd., #415
So. San Francisco, CA 94080

VPD IV Inc.
6051 S Watt Ave.
Sacramento, CA 95829

J B Hunt
File #98545
615 J.B. Hunt Corporate Dr.
Lowell, AR 97245

Komlofske Corp.
1535 E. 3rd St.
Prineville, OR 97754

Tarks, Inc.
3752 Colver Rd.
Phoenix, OR 97535

Willamina Foods, LLC
8630 SW Scholls Ferry Rd.
Beaverton, OR 97008

Marc and Charlotte Gould
5494 Goodrich Hwy.
Oakland, OR 97462

Marc and Charlotte Gould
c/o Raymond M. Ramsay
Ramsay & Stein PC
4285 Commercial St SE #140
Salem, OR 97302

S and J Reed, Inc.
c/o Steve Reed
2100 Pine Gate Way
White City, OR 97503

Nor-Cal Produce Inc.
2995 Oates St.
West Sacramento, CA 95691

The News Group
3995 70th Ave. E #B
Fife, WA 98424-1126

Pacific Power & Light Co.
1033 NE 6th Ave.
Portland, OR 95256-9199

Coca Cola Bottling Company
15333 SW Sequoia Pkwy.
Portland, OR 97224

Reser's Fine Foods Inc.
15570 SW Jenkins Rd.
Beaverton, OR 97006

**OTHER**

Nidiffer Family LLC
c/o David A. Foraker
Greene & Markley, P.C.
1515 SW Fifth Ave., Suite 600
Portland, OR 97201

The Food Partners
c/o Matthew S. Morris, Principal
5335 Wisconsin Ave., NW
Washington, DC 20015