**DISTRICT OF OREGON**

**F I L E D**

**November 21, 2013**

**Clerk, U.S. Bankruptcy Court**

Below is an Order of the Court.

FRANK R. ALLEY
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 13-64561-fra11 |
| C & K Market, Inc., | **INTERIM ORDER GRANTING DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM AND FINAL BASIS** |
| Debtor. | |

   This matter came before the Court on November 20, 2013, upon the motion [Dkt. No. 26] (the "Motion"), dated November 19, 2013, filed by the debtor (the "Debtor") in the above-captioned Chapter 11 case (the "Case") pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules (the "Local Rules") of the United States Bankruptcy Court for the District of Oregon, requesting, among other things entry of this interim order (this "Interim Order"):

**Page 1 of 17 -**  INTERIM ORDER GRANTING DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM AND FINAL BASIS

(i)        authorizing the Debtor to obtain secured post-petition financing on a super-priority basis (the "DIP Facility") subject to only to the Permitted Liens (as defined in the Financing Agreement (defined herein)) and Priming Interests (as defined in the Financing Agreement);

(ii)       authorizing the Debtor to execute and enter into the Third Amendment to Financing Agreement (the "Third Amendment"), which amends the Financing Agreement dated as of October 28, 2010, between the Debtor, C&K Express, LLC ("Express" and together with the Debtor, the "Borrowers"), and U.S. Bank National Association ("U.S. Bank")  (as amended, including as amended by the Third Amendment, the "Financing Agreement") (a copy of which, including all amendments (but excluding schedules and exhibits), has been filed with the Court, is available on the Court's website and is also available upon request by contacting counsel for the Debtor), and to perform such other and further acts as may be required in connection with the Financing Agreement and the Loan Documents (as defined in the Financing Agreement);

(iii)      granting super-priority administrative expense claims to U.S. Bank for the post-petition financing payable from, and having recourse to all of the pre-petition and post-petition property of the Debtor's estate (the "Estate") and all proceeds thereof (except for avoidance actions and the proceeds of avoidance actions) subject only to the Carve-Out (defined herein), the Permitted Liens and Priming Interests, and granting liens for the post-petition financing to U.S. Bank in all Post-Petition Collateral (defined herein) in accordance with the Financing Agreement, the Loan Documents and this Interim Order;

(iv)      scheduling a final hearing (the "Final Hearing") to be held on December 19, 2013 to consider entry of a final order authorizing, among other things, the Debtor to obtain financing under the DIP Facility, the Financing Agreement and the other Loan Documents on a final basis (the "Final Order");

**Page 2 of 17** - ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

(v)      an interim hearing (the "Interim Hearing") on the Motion having been held before the Court on November 20, 2013, to consider entry of this Interim Order, appearances being noted on the record, the Debtor and U.S. Bank having agreed to the entry of this Interim Order, all objections to the Interim Order being resolved, overruled or withdrawn, and after due deliberation and consideration and sufficient cause appearing therefor:

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:

1.      Jurisdiction; Petition Date.

(a)      This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(D), (K), (M), and (O).

(b)      On November 19, 2013, the Debtor filed its Chapter 11 petition (the "Petition Date").  Since the Petition Date, the Debtor has remained in possession and control of its assets as a debtor-in-possession pursuant to sections 1107 and 1108 of Title 11 of Bankruptcy Code.

2.      Disposition. The Motion is hereby granted, effective as of the date of the filing of the Motion, on an interim basis on the terms set forth herein.  Any objections to the Motion or to the interim relief sought in the Motion have been resolved, withdrawn or are hereby overruled on the merits.  This Interim Order shall be valid, binding on all parties in interest and fully effective on an interim basis upon entry by the Court.

3.      Notice.  The Interim Hearing with respect to the Motion was held pursuant to the authorization of Bankruptcy Rule 4001(c)(2).  Notice was served on the parties listed on the certificate of service filed in respect of the Motion.

4.      Debtor's Stipulations Regarding Pre-Petition Indebtedness.  In connection the Financing Agreement, the other Loan Documents and this Interim Order, the Debtor acknowledges, represents, stipulates and agrees (subject to paragraph 20 below) that:

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

(a)    U.S. Bank is the holder of a claim immediately prior to the filing of the petition, against the Debtor in the approximate sum of $33,806,109.05 consisting of borrowings of $32,462,600.27, accrued interest and unused line fees of $93,508.78, reimbursement obligations for outstanding letters of credit of $1,250,000, plus all other costs, fees and obligations owing, including, without limitation, all costs and expenses of administration, collection and enforcement incurred by U.S. Bank prior to the Petition Date (the "Pre-Petition Indebtedness"). To the extent permitted under § 506(b) of the Bankruptcy Code, U.S. Bank is also entitled to interest accrued after commencement of the Case and the reasonable fees, costs and charges referred to in § 506(b).

(b)    The Pre-Petition Indebtedness is evidenced by, without limitation, (i) the Financing Agreement, (ii) a Financing Agreement dated November 2, 2012, among the Borrowers and U.S. Bank, as the same may have been amended or supplemented; (iii) a $30,000,000 Revolving Loan Note in dated November 3, 2010, by the Borrowers in favor of U.S. Bank; (iv) a $13,500,000 Term Loan A Note dated November 3, 2010, by the Borrowers in favor of U.S. Bank; (v) a $6,131,088 Term Loan Note dated November 2, 2012, by the Borrowers in favor of U.S. Bank; (vi) and by certain other documents relating to the foregoing, including the Loan Documents (as defined in the Financing Agreement).

(c)    Payment of the Pre-Petition Indebtedness is absolutely and unconditionally due and payable, without defense, offset or counterclaim, and the Debtor waives and releases (i) any right to object to the allowance of, and any defense with respect to, the Pre-Petition Indebtedness, and (ii) any right to contest the priority, perfection or validity the liens securing such Pre-Petition Indebtedness.

(d)    Pursuant to section 552(b) of the Bankruptcy Code and the Loan Documents, including, without limitation, a Security Agreement dated as of October 28, 2010, between the Borrowers and U.S. Bank, the Pre-Petition Indebtedness is secured by a security interest and lien in substantially all of the Debtor's real and personal property, whether now owned

**Page 4 of 17** -    ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

or hereafter acquired, including, without limitation, all accounts, chattel paper and electronic chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, investment property, intellectual property rights, inventory intellectual property rights, inventory, letter-of-credit rights, letters of credit, together with all substitutions and replacements for and products of any of the foregoing, the proceeds of any and all of the foregoing and all proceeds and products of such collateral security acquired by the Estate after the commencement of the Case (such collateral security, proceeds and products are herein called the "Pre-Petition Collateral"). The Pre-Petition Collateral does not include certain real property interests and proceeds from the sale of certain real property located in Criswell, Oregon in which U.S. Bank did not have a security interest and the funds held by Wilmington Trust Retirements and Institutional Services Company pursuant to the C&K Market, Inc. Deferred Compensation Plan deemed effective January 1, 2009.

    5.  <u>Findings Regarding the DIP Facility Based on the Record at the Interim Hearing</u>.

    (a)  It is necessary for the Debtor to obtain post-petition financing for a period of time and in an amount which would allow the Debtor to continue to operate as a going concern, to enable the Debtor to continue to operate its grocery store chain, to pay employees, and to preserve the value of its assets. An immediate need exists for the Debtor to obtain further credit from U.S. Bank. Without such funds the Debtor will not be able to continue the operation of its business and to pay its employees, and reorganization may become impossible.

    (b)  U.S. Bank has indicated a willingness to extend post-petition secured credit under the terms and conditions of this Interim Order, the Financing Agreement and the Loan Documents. The Debtor is unable to obtain financing on terms more favorable than terms offered by U.S. Bank under the Financing Agreement and the Loan Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit under section 364(c)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

and (d) of the Bankruptcy Code on terms more favorable than those set forth in the Financing

Agreement and Loan Documents.

(c)        The terms of the Financing Agreement and the Loan Documents are fair

and reasonable, were negotiated by the parties at arm's length and in good faith and are the best

available to the Debtor under present market conditions and the Debtor's financial circumstances.

Based on the foregoing, any credit extended under the Financing Agreement and the other Loan

Documents by U.S. Bank is extended in good faith, as that term is used in section 364(e) of the

Bankruptcy Code.

(d)        The Debtor, in order to satisfy its interim need for post-petition financing,

as determined in the exercise of its sound business judgment, desires the Court to enter this Interim

Order.  Entry of this Interim Order is necessary to prevent irreparable harm to the Debtor,

including the harm that would result from the disruption of the Debtor's business, will increase the

possibilities for a successful reorganization as a going concern, and is in the best interest of the

Debtor's Estate.  Absent entry of this Interim Order, the Debtor's Estate will be immediately and

irreparably harmed.  Consummation of the DIP Facility is in the best interest of the Debtor's

Estate.

6.        Authorization of the DIP Facility and Third Amendment.

(a)        The Borrower is authorized to enter into the DIP Facility and the Third

Amendment and to incur postpetition debt under the DIP Facility pursuant to the terms of the

Financing Agreement, the Loan Documents and this Interim Order.  To the extent of any conflict

between this Interim Order and the Third Amendment or any other Loan Documents, this Interim

Order shall govern.

(b)        In accordance with the terms of this Interim Order, the Financing

Agreement and the other Loan Documents, the DIP Facility shall be used to (i) fund the working

capital requirements and other financing needs of the Debtor during the pendency of the Case,

**Page 6 of 17** -    ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING
                      CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH
                      MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

(ii) pay certain transaction fees and other costs of expenses of the administration of the Case,

(iii) pay fees and expenses (including, without limitation, attorney's fees  and advisory fees owed

to U.S. Bank under the Loan Documents, including, without limitation, reasonable fees and

expenses incurred prior to the commencement of the Case).  Use of funds shall further be

consistent with the Budget attached hereto as Exhibit 1, which may be amended from time to time

by delivery of a revised and updated Budget by the Debtor to U.S. Bank and which shall be

effective and become the Budget referred to herein only upon written approval of such amended

Budget by U.S. Bank in its reasonable discretion.  Compliance with the Budget shall be

determined as follows: (a) Operating Expenses (as defined in the Financing Agreement) shall not

exceed 115%  of the aggregate amount of Operation Expenses set forth in the Budget for such

week (tested on a four-week trailing basis); provided, however, that the Debtor may increase

disbursements for expenditures under the "Inventory Purchase" line in the Budget by an amount

equal to 68 cents of each dollar of grocery sale revenue collected by the Debtor in excess of the

amount of such revenue set forth in the Budget for such week,  (b) at any time, disbursements for

any line item of Non-Operating Expense (as defined in the Financing Agreement) (other than

disbursements for Financing Costs (as defined in the Financing Agreement) and Expenses (as

defined in the Financing Agreement)) shall not exceed the maximum aggregate amount  set forth

in the Budget with respect to such line item of Non-Operating Expense (tested on a cumulative

basis from the beginning of the Case), and (c) revenues generated in the ordinary course of

business of the Debtor shall not be less than 85%  of the amount of revenues set forth in the Budget

(tested on a four-week trailing basis).  The DIP Facility shall not be used to pay any fees or

expenses incurred at any time in connection with the filing or prosecution of any action which

seeks to invalidate, challenge, dispute, avoid, subordinate or otherwise impair the claims

U.S. Bank, or any liens or priorities in favor of U.S. Bank, or which seeks to recover on any claims

against or transfers made to U.S. Bank; provided, however, that any official committee of

**Page 7 of 17** -   ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING
CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

unsecured creditors (the "Committee") may investigate the liens, security interests, and claims of U.S. Bank.

(c)      Subject to the Local Rules, any and all fees and expenses paid or required to be paid in connection with the Financing Agreement shall be paid by the Debtor as detailed therein.

(d)      The Debtor is hereby authorized and directed to pay the DIP Facility Fee (as defined in the Financing Agreement) in accordance with the terms of the Financing Agreement.

(e)      In furtherance of the foregoing and without further approval of the Court, the Debtor is authorized and directed on an interim basis to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages and financing statements) that may be required, necessary (including necessary by reason of request by U.S. Bank) for the Debtor's performance under the Financing Agreement, the Loan Documents or this Interim Order.

(f)      Upon execution of the Third Amendment and the entry of this Interim Order, obligations, agreements and covenants of the Debtor under the Financing Agreement and the Loan Documents shall be valid and binding and enforceable against the Debtor under the terms of the Financing Agreement, the Loan Documents and this Interim Order.  Subject to paragraph 20 below, no payment, advance, financial accommodation, transfer or grant of security under the Financing Agreement, the Loan Documents or this Interim Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.      <u>DIP Facility Advances; Effective Date</u>.

(a)      Revolving advances made and the letters of credit issued (or renewed) under the DIP Facility from and after the DIP Facility Effective Date (defined herein) until the Maturity Date (defined herein) shall be governed by the terms and conditions of the Financing

**Page 8 of 17** - ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Agreement, the Loan Documents and this Interim Order, including, without limitation, the terms and conditions governing the applicable interest rates. The "Maturity Date" shall mean the earliest of (i) one year following the Petition Date, (ii) the sale of all or substantially all of the assets of the Debtor pursuant to a sale under section 363 of the Bankruptcy Code, or (iii) the date on which the Debtor's plan of reorganization becomes effective. The "Post-Petition Indebtedness" shall be all Obligations (as such term is defined in the Financing Agreement) arising subsequent to the date on which the Debtor filed its petition for relief in the Case, including post-petition interest. The "DIP Facility Effective Date" shall be the date upon which the Court enters this Interim Order.

(b)     U.S. Bank shall not be required to extend credit under the DIP Facility unless and until U.S. Bank and its legal counsel are satisfied that: (i) the conditions precedent for such revolving advances and Letters of Credit set forth in the Financing Agreement have been met; and (ii) no Event of Default under this Interim Order has occurred.

8.     <u>Post-Petition Indebtedness; Liens and Priority</u>.

(a)     The Post-Petition Indebtedness shall be:

(1)     allowable under § 503(b)(1) of the Code as an administrative expense with priority pursuant to the provisions of § 364(c)(1) of the Code over all other administrative expenses of the kind specified in § 503(b) or § 507(b) of the Code and all other expenses and claims, subject only to the Carve Out; and

(2)     secured by (and U.S. Bank, is hereby granted) a security interest in and lien on all present and future property of the Estate, including both real and personal property, whether now held or hereafter acquired by the Estate, and including specifically and without limitation (excepting avoidance actions and the proceeds thereof under sections 544, 547, 548, 549 and 553 of the Bankruptcy Code) (A) all of the Estate's now owned or hereafter acquired accounts, chattel paper and electronic chattel paper, deposit accounts, documents, equipment,

**Page 9 of 17** -     ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

general intangibles, goods, instruments, investment property, intellectual property rights, inventory intellectual property rights, inventory, letter-of-credit rights, letters of credit, and any items in any lockbox account; together with (i) all substitutions and replacements for and products of any of the foregoing; (ii) in the case of all goods, all accessions; (iii) all accessories, attachments, parts, and repairs now or hereafter attached or affixed to or used in connection with any goods; (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing; (v) all collateral subject to the lien of any security document in favor of U.S. Bank; (vi) any money, or other assets of the Debtor that may or hereafter come into possession, custody or control of U.S. Bank; (vii) proceeds of any and all of the foregoing; (viii) books and records of the Debtor, including all mail or electronic mail addressed to the Debtor; (ix) all of the foregoing, whether now owned or existing or hereafter acquired or arising or in which the Debtor now has or hereafter acquires any rights; and (x) all proceeds and products of such collateral security acquired by the Estate, (B) the Pre-Petition Collateral, (C) all real estate of the Estate, and (D) all proceeds, products, rents, issues and profits of all of the foregoing (all herein referred to as the "Post-Petition Collateral"), which lien and security interest shall have priority over all other liens, claims and expenses in the Debtor's Case except with respect to the (i) Carve-Out and (ii) all other valid, duly perfected pre-petition statutory liens, security interests and other liens in assets of the Debtor which are Permitted Liens.  The liens and security interests granted above to secure payment of the Post-Petition Indebtedness shall be valid and enforceable regardless of whether the Court determines that some or all of the security interests and liens held by U.S. Bank in the Pre-Petition Collateral are unenforceable for any reason.

**Page 10 of 17** -    ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING
CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

9.    <u>Perfection of U.S. Bank Liens; Termination</u>.  Entry of this Interim Order automatically perfects the liens granted by paragraph 8 of this Interim Order.

10.    <u>U.S. Bank; Use of Collateral; Adequate Protection; Application of Funds</u>.

(a)    Any cash collateral of U.S. Bank used by the Debtor since the commencement of the Debtor's Case shall constitute Post-Petition Indebtedness under the DIP Facility.  Notwithstanding the foregoing, the Debtor is not authorized to use U.S. Bank's cash collateral (other than to the extent advances under the DIP Facility constitute cash collateral).

(b)    On a daily basis, the Debtor shall pay over to U.S. Bank all cash proceeds (and cash equivalents) of Collateral for application to the Pre-Petition Indebtedness and the Post-Petition Indebtedness as provided in the Financing Agreement.

(c)    Absent manifest error, application of funds by U.S. Bank to the reduction of the Pre-Petition Indebtedness or the Post-Petition Indebtedness shall be final.  Nothing shall impair the validity of such application or such security interest or lien, subject to paragraph 20 below.

11.    <u>Events of Default</u>.  The Events of Default contained in the Financing Agreement (as amended by the Third Amendment) are hereby approved and incorporated herein by reference.

12.    <u>U.S. Bank's Remedies</u>.  Upon the occurrence of an Event of Default:

(a)    U.S. Bank may refuse to make revolving advances or to issue (or renew) Letters of Credit; and

(b)    U.S. Bank shall be entitled to relief from the automatic stay to enforce its rights and remedies under this Interim Order, the Financing Agreement, the Loan Documents and any applicable law upon filing an affidavit (the "Affidavit") with the Court certifying the occurrence of an Event of Default.  Contemporaneously with such filing, (i) U.S. Bank shall serve a copy of the Affidavit upon the Debtor, the Committee and the U.S. Trustee's Office, and (ii) U.S. Bank may request an expedited hearing regarding relief from the automatic stay, which

**Page 11 of 17** -   ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

such hearing may be scheduled within 72 hours of the filing of the Affidavit. The Debtor shall be entitled to file a response to the Affidavit with the Court, but such response must be limited to whether an Event of Default has occurred that has not been cured. If the Borrower fails to file such a response, the Court shall enter an order terminating the automatic stay.

13.    No Marshalling. Subject to the entry of a final order, in no event shall U.S. Bank be subject to the equitable doctrine of marshalling or any similar doctrine.

14.    Retention of Counsel and Consultants; Costs and Expenses. U.S. Bank is authorized to retain such counsel and consultants (including financial consultants and investment bankers) as U.S. Bank may determine from time to time in its reasonable discretion. Payment of fees and expenses incurred by U.S. Bank in connection with the Loan Documents, the Case, and all matters related to any of the foregoing, including, without limitation, all fees and disbursements of legal counsel of U.S. Bank, all fees and disbursements of consultants to U.S. Bank (including financial consultants), all appraisal fees, all title costs or fees, filing fees, mortgage registry tax, recording and other out-of-pocket expenses incurred by U.S. Bank shall be paid by the Debtor pursuant to the terms of the Financing Agreement and the Loan Documents, subject to the procedures set forth in the Local Rules.

15.    Allowance for Improvements made by the Estate. Subject to the entry of a final order, in consideration of the Debtor's use of the Collateral in accordance with the Loan Documents, and in view of the effect of such use, (i) the Collateral shall not be subject to any surcharge under Section 506(c) of the Bankruptcy Code and (ii) the "equities of the case" exception in Section 522 shall not apply with respect to the Collateral.

16.    Successors and Assigns. Except as otherwise stated herein, the provisions of this Interim Order shall be binding upon all persons and entities and shall inure to the benefit of U.S. Bank, the Debtor and their respective successors and assigns, including, without limitation, any subsequent Chapter 11 or Chapter 7 trustee.

**Page 12 of 17** -    ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

17.    <u>Carve-Out for United States Trustee Fees and Professional Fees</u>.  Subject to the terms and conditions contained in this paragraph 17, all prepetition and postpetition claims (whether secured or unsecured) of U.S. Bank, including U.S. Bank's super-priority administrative expense claim, are subordinate to the Carve Out (as defined below).  As used herein, the term "Carve Out" shall mean amounts: (a) payable pursuant to 28 U.S.C. § 1930(a)(6) and fees payable to the clerk of the Court, (b) $100,000 for reasonable fees and expenses of attorneys and financial advisors employed by the Debtor or by the Committee (including allowed expenses of the members of such statutory committees) pursuant to Sections 327 and 1103 of the Bankruptcy Code incurred following an Event of Default, (c) the amount of funds then on deposit in the Professional Fee Holding Account, and (d) the amount of administrative expenses incurred but not yet paid into the Professional Fee Holding Account in an aggregate amount not to exceed $100,000.  The Carve Out shall exclude any fees and expenses incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief invalidating, setting aside, avoiding, subordinating, or otherwise adversely affecting U.S. Bank's claims against the Estate (including the Pre-Petition Indebtedness, the Post-Petition Indebtedness, and U.S. Bank's liens on the Collateral).

18.    <u>Stay; Modification</u>.  No subsequent stay, modification, termination, failure to extend the term or vacation of this Interim Order shall affect, limit or modify the validity, priority or enforceability of any liability of the Debtor under the Financing Agreement or the other Loan Documents, or any lien or security interest granted to U.S. Bank under the such documents. All credit extended under the Financing Agreement and the other Loan Documents is made in reliance on this Interim Order, and, except as set forth below, the obligations the Debtor incurs to U.S. Bank under the Financing and the other Loan Documents cannot be subordinated, lose superpriority status, or be deprived of the benefit of the senior liens granted to U.S. Bank, by any

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

subsequent order in the Debtor's Chapter 11 case or a converted Chapter 7 case.  The provisions of this Interim Order dealing with the liability of the Debtor under the Financing Agreement and the other Loan Documents shall not be modified or superseded by any order confirming a plan of reorganization (including the use of the cram-down provisions of section 1129(b) of the Code) in the Debtor's Case.  If any party shall appeal the order approving the DIP Facility or shall successfully challenge the validity, perfection or priority of any pre-petition liens in favor of U.S. Bank (a "Special Event"), U.S. Bank may terminate its commitment to fund any DIP Advances and stop funding any DIP Advances upon seven days prior written notice to the Debtor. No termination (if any) of U.S. Bank's commitment to fund any DIP Advance shall affect, limit or modify the validity, priority or enforceability of any liability of the Debtor under the Financing Documents or any lien granted to U.S. Bank thereunder, provided, however, that if such termination is due to a Special Event, then the DIP Advances and all other post-petition obligations owing to U.S. Bank under the DIP Facility will have super priority administrative expense status and other priority status provided under 11 U.S.C. § 364 only to the extent of any increase in exposure of U.S. Bank during the pendency of the Bankruptcy Case, and the Debtor may seek to use U.S. Bank's cash collateral and may also seek to obtain alternative post-petition financing, and U.S. Bank may oppose any such use of cash collateral and any such alternative post-petition financing.

    19. <u>Preservation of Rights Under This Interim Order</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting the Debtor's Case to a Chapter 7 case, (b) confirming or consummating any plan of reorganization of the Debtor or (c) dismissing the Debtor's Case or any subsequent Chapter 7 case pursuant to sections 303, 305 or 1112 of the Bankruptcy Code, and the terms and provisions of this Interim Order as well as the priorities in payment, liens and security interests granted pursuant to this Interim Order, the Financing Agreement and the other Loan Documents

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Interim Order until all Obligations are indefeasibly paid and satisfied.

20.     <u>Challenge of Claim or Lien.</u>  The acknowledgements and admissions of the Debtor in paragraph 4 of hereof shall be binding on its Estate, all parties in interest, including, without limitation, any Committee, unless the Committee or other party in interest has filed an adversary proceeding or contested matter challenging any such acknowledgements or admissions no later than the date that is the later of (i) 90 days after the entry of this Interim Order; and (ii) 60 days from the date of formation of the Committee.  If no such adversary proceeding or contested matter is timely commenced as of such date, the Pre-Petition Indebtedness of U.S. Bank shall constitute allowed secured claims, not subject to objection or subordination and otherwise unavoidable, and the pre-petition liens of U.S. Bank on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind or subordination, and otherwise unavoidable.

21.     <u>Right to Credit Bid</u>.  The right of U.S. Bank to credit bid the Obligations owed to U.S. Bank by the Debtor (pursuant to section 363(k) of the Bankruptcy Code), in whole or in part, in connection with any sale or disposition of assets in the Case (including in connection with a plan of reorganization for which confirmation is sought under section 1129(b)(2)(A)(i)) is hereby expressly reserved and preserved by this Interim Order.

22.     <u>Amendments and Modifications</u>.  The Debtor and U.S. Bank may enter into any non-material amendments or modifications to the Financing Agreement and the Loan Documents without notice or a hearing or further order of this Court; provided, however, that any such modifications shall be filed with the Court and shall not be adverse to the Debtor or its Estate.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

23.     <u>Interim Order Governs</u>.   Except as otherwise specifically provided in this Interim Order, in the event of a conflict between the provisions of this Interim Order, the Motion and the Loan Documents, the provisions of this Interim Order shall govern.

24.     <u>Final Hearing</u>.  The final hearing on approval of the DIP Facility is scheduled for December 19, 2013, at 10:00 a.m. PST in Courtroom No. 6 of the United States Bankruptcy Court, 405 East 8th Avenue, Eugene, Oregon.

25.     <u>Notice of Final Hearing; Objections to Entry of Final Order</u>.  The Debtor shall mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including notice that the Debtors will seek at the Final Hearing a waiver of rights under section 506(c) of the Bankruptcy Code) within three (3) business days from the date of entry of this Interim Order to the parties that received notice of the Interim Hearing, any other party that has filed a request for notices with the Court, to the Office of the United States Trustee and to counsel for any Committee that may be appointed in the Case.  Any party in interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file and serve such objection so as to be received no later than December 12, 2013, at 4:00 p.m. PST on the following:

(a)     Tonkon Torp LLP; 1600 Pioneer Tower; 888 SW Fifth Avenue; Portland, Oregon 97204; Attention: Albert Kennedy; Albert.Kennedy@tonkon.com;

(b)     Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, Minnesota 55402; Attention: Michael Stewart, Breia Schleuss and Colin Dougherty; Michael.Stewart@Faegrebd.com; Breia.Schleuss@Faegrebd.com; Colin.Dougherty@Faegrebd.com;

(c)     Miller Nash LLP, 3400 U.S. Bancorp Tower, 111 S.W. Fifth Avenue, Portland, Oregon 97204; Attention: Teresa Pearson; Teresa.Pearson@MillerNash.com;

**Page 16 of 17** -   ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

(d)    Buchalter Nemer, A Professional Corporation, 1000 Wilshire Boulevard,

Suite 1500, Los Angeles, California 90017; Attention: Pamela Webster and William Schoenholz;

pwebster@buchalter.com; wscholenholz@buchalter.com;

(e)    Greene & Markley, P.C., 1515 S.W. Fifth Avenue, Suite 600; Portland,

Oregon 97201; Attention David Foraker; David.Foraker@GreeneMarkley.com; and

(f)    Office of the United States Trustee for the District of Oregon.

### ###

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

Presented by:

TONKON TORP LLP


By /s/ Michael W. Fletcher
      Albert N. Kennedy, OSB No. 821429
      Timothy J. Conway, OSB No. 851752
      Michael W. Fletcher, OSB No. 010448
      Ava L. Schoen, OSB No. 044072
      888 S.W. Fifth Avenue, Suite 1600
      Portland, OR 97204-2099
      Telephone:    503-221-1440
      Facsimile:     503-274-8779
      E-mail:     al.kennedy@tonkon.com
                     tim.conway@tonkon.com
                     michael.fletcher@tonkon.com
                     ava.schoen@tonkon.com
      Attorneys for Debtor

cc:    List of Interested Parties

**Page 17 of 17** -   ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING
                      CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH
                      MANAGEMENT SYSTEM
                      **Tonkon Torp** LLP
                      888 SW Fifth Avenue, Suite 1600
                      Portland, Oregon 97204
                      503-221-1440

# EXHIBIT 1

# C&K Market, Inc.

Cash Flow Forecast
CK Projection DIP Loan v14
11/21/2013

| | Week 1 11/24/13 | Week 2 12/1/13 | Week 3 12/8/13 | Week 4 12/15/13 | Week 5 12/22/13 | Week 6 12/29/13 | Week 7 1/5/14 | Week 8 1/12/14 | Week 9 1/19/14 |
|---|---|---|---|---|---|---|---|---|---|
| **Cash - Beginning of week** | - | - | - | - | - | - | - | - | - |
| **CASH RECEIPTS:** | | | | | | | | | |
| *Operating:* | | | | | | | | | |
| Sales - Market | 5,076,880 | 7,159,623 | 5,596,797 | 5,346,016 | 6,278,478 | 5,239,410 | 5,747,578 | 5,301,828 | 5,087,110 |
| Other | 12,500 | 41,500 | 104,500 | 10,000 | 10,000 | 10,000 | 75,500 | 75,500 | 12,500 |
| Total Operating | 5,089,380 | 7,201,123 | 5,701,297 | 5,356,016 | 6,288,478 | 5,249,410 | 5,823,078 | 5,377,328 | 5,099,610 |
| **Non-Operating:** | | | | | | | | | |
| Cash balances - Sold/Closed stores | - | - | - | - | - | - | - | - | - |
| Proceeds from Sale of Inventory | - | 543,128 | 977,631 | 977,631 | 977,631 | 977,631 | 977,631 | - | - |
| Proceeds from Sale of Equipment | - | - | - | 683,373 | 683,373 | 683,373 | - | - | - |
| Proceeds from Sale of Real Estate (net) | - | - | - | - | - | - | - | - | - |
| Total Non-Operating | | 543,128 | 977,631 | 1,661,004 | 1,938,814 | 1,661,004 | 977,631 | | |
| **Total Receipts** | **5,089,380** | **7,744,252** | **6,678,927** | **7,017,020** | **8,227,292** | **6,910,414** | **6,800,709** | **5,377,328** | **5,099,610** |
| **CASH DISBURSEMENTS:** | | | | | | | | | |
| *Operating:* | | | | | | | | | |
| Inventory purchases - Market | (2,047,482) | (6,548,022) | (4,299,285) | (3,778,336) | (4,228,054) | (3,726,921) | (4,031,230) | (3,718,591) | (3,567,992) |
| Salaries & Benefits - Market | | (2,366,965) | (2,366,965) | (2,366,965) | (2,366,965) | (2,366,965) | | (2,165,319) | |
| Payment of accrued liabilities | | | | | | (171,686) | (343,371) | (343,371) | (343,371) |
| Operating Expenses - Market | (553,423) | (648,168) | (1,497,898) | (483,980) | (568,397) | (474,329) | (510,041) | (1,462,016) | (451,431) |
| Operating Expenses - Corporate | (49,990) | (282,589) | (52,385) | (415,614) | (58,766) | (264,616) | (79,907) | (422,530) | (70,724) |
| Total Operating | (2,650,895) | (9,845,745) | (5,849,568) | (7,044,895) | (4,855,217) | (7,004,517) | (4,964,549) | (8,111,827) | (4,090,147) |
| **Non-Operating:** | | | | | | | | | |
| Operating Expenses - Corporate Prof Fees | | | (265,000) | | | | (295,000) | | |
| Operating Expenses - Lender Prof Fees | | | | | | | | | |
| PACA Payments | (1,600,000) | | | | | | | | |
| Debt principal payments | | | (182,839) | (683,373) | (683,373) | (683,373) | (74,459) | (109,103) | |
| Debt interest payments | | | (190,543) | | | | (123,575) | (37,709) | |
| Capital Expenditures | (29,577) | (23,661) | (23,661) | (23,661) | (23,661) | (23,661) | (62,500) | (62,500) | (62,500) |
| Store Closing costs | (130,000) | (130,000) | (52,000) | (52,000) | (52,000) | (52,000) | (52,000) | | |
| Deposits - Utilities | | (500,000) | (500,000) | | | | | | |
| Other | | | | (25,000) | | | | | |
| Total Non-Operating | (1,759,577) | (653,661) | (1,214,043) | (784,034) | (759,034) | (759,034) | (607,534) | (209,312) | (62,500) |
| **Total Disbursements** | **(4,410,472)** | **(10,499,406)** | **(7,063,611)** | **(7,828,929)** | **(5,614,251)** | **(7,763,551)** | **(5,572,083)** | **(8,321,139)** | **(4,152,647)** |
| **NET CASH INFLOW/(OUTFLOW)** | **678,908** | **(2,755,154)** | **(384,683)** | **(811,910)** | **2,613,041** | **(853,137)** | **1,228,625** | **(2,943,810)** | **946,962** |

# C&K Market, Inc.

Cash Flow Forecast
CK Projection DIP Loan v14
11/21/2013

| | Week 1 11/24/13 | Week 2 12/1/13 | Week 3 12/8/13 | Week 4 12/15/13 | Week 5 12/22/13 | Week 6 12/29/13 | Week 7 1/5/14 | Week 8 1/12/14 | Week 9 1/19/14 |
|---|---|---|---|---|---|---|---|---|---|
| **REVOLVER LOAN BALANCE:** | | | | | | | | | |
| Projected Beginning Revolver Balance | 13,097,522 | 12,485,662 | 10,535,999 | 10,535,999 | 10,535,999 | 10,535,999 | 10,535,999 | 8,487,123 | 8,487,123 |
| Borrowing (Payment) on revolver | (678,908) | 2,755,154 | 384,683 | 811,910 | 2,613,041 | 853,137 | (1,228,625) | 2,943,810 | (946,962) |
| Less: Cash Balance-market (sold/closed stores) | - | | | | | | | | |
| Less: DIP (Borrowings) Payments | 67,048 | (4,704,818) | (384,683) | (811,910) | (2,613,041) | (853,137) | (820,250) | (2,943,810) | 946,962 |
| **Projected Ending Revolver Balance** | 12,485,662 | 10,535,999 | 10,535,999 | 10,535,999 | 10,535,999 | 10,535,999 | 8,487,123 | 8,487,123 | 8,487,123 |
| DIP Beginning Balance | - | (67,048) | 4,637,770 | 5,022,453 | 5,834,363 | 3,221,322 | 4,074,459 | 4,894,710 | 7,838,520 |
| DIP Borrowing (Repayment) | (67,048) | 4,704,818 | 384,683 | 811,910 | (2,613,041) | 853,137 | 820,250 | 2,943,810 | (946,962) |
| **DIP Ending Balance** | (67,048) | 4,637,770 | 5,022,453 | 5,834,363 | 3,221,322 | 4,074,459 | 4,894,710 | 7,838,520 | 6,891,557 |
| **Total DIP Borrowing** | 12,418,614 | 15,173,768 | 15,558,452 | 16,370,361 | 13,757,320 | 14,610,458 | 13,381,832 | 16,325,643 | 15,378,680 |
| **Availability before $4 million cap** | **10,581,386** | **7,362,230** | **6,977,547** | **6,165,637** | **8,778,678** | **7,925,541** | **7,105,290** | **4,161,480** | **5,108,443** |
| Maximum Availability | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 |
| **Borrowing Base:** | | | | | | | | | |
| Credit Card Receivables | 1,860,000 | 1,488,000 | 1,488,000 | 1,488,000 | 1,488,000 | 1,488,000 | 1,488,000 | 1,488,000 | 1,488,000 |
| Inventory: Non-Perishable | 9,855,281 | 8,466,239 | 8,466,239 | 8,466,239 | 8,466,239 | 8,466,239 | 7,077,197 | 7,077,197 | 7,077,197 |
| Inventory: Liquor, Beer, Wine | 1,676,479 | 1,440,190 | 1,440,190 | 1,440,190 | 1,440,190 | 1,440,190 | 1,203,900 | 1,203,900 | 1,203,900 |
| Inventory: Perishable | 3,005,051 | 2,581,507 | 2,581,507 | 2,581,507 | 2,581,507 | 2,581,507 | 2,157,964 | 2,157,964 | 2,157,964 |
| PACA | (1,600,000) | (1,200,000) | (1,200,000) | (1,200,000) | (1,200,000) | (1,200,000) | (1,200,000) | (1,200,000) | (1,200,000) |
| Money Order/Western Union | (536,400) | (536,400) | (536,400) | (536,400) | (536,400) | (536,400) | (536,400) | (536,400) | (536,400) |
| Loyalty Card | (316,500) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) |
| LOC | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) |
| Gift Cards | (158,250) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) |
| Rent Reserve | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) |
| **Total Borrowing Base** | 12,485,662 | 10,535,999 | 10,535,999 | 10,535,999 | 10,535,999 | 10,535,999 | 8,487,123 | 8,487,123 | 8,487,123 |
| **DIP Commitment Amount** | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 |
| **DIP Facility** | 23,000,000 | 22,535,999 | 22,535,999 | 22,535,999 | 22,535,999 | 22,535,999 | 20,487,123 | 20,487,123 | 20,487,123 |

# C&K Market, Inc.

Cash Flow Forecast
CK Projection DIP Loan v14
11/21/2013

| | Week 10 1/26/14 | Week 11 2/2/14 | Week 12 2/9/14 | Week 13 2/16/14 | Week 14 2/23/14 | Week 15 3/2/14 | Week 16 3/9/14 | Week 17 3/16/14 | Week 18 3/23/14 |
|---|---|---|---|---|---|---|---|---|---|
| **Cash - Beginning of week** | | | | | | | | | |
| **CASH RECEIPTS:** | | | | | | | | | |
| **Operating:** | | | | | | | | | |
| Sales - Market | 4,818,401 | 5,570,582 | 5,475,759 | 5,642,657 | 5,141,733 | 5,235,851 | 5,368,962 | 5,068,503 | 4,899,916 |
| Other | 12,500 | 44,000 | 107,000 | 12,500 | 12,500 | 41,500 | 104,500 | 10,000 | 10,000 |
| Total Operating | 4,830,901 | 5,614,582 | 5,582,759 | 5,655,157 | 5,154,233 | 5,277,351 | 5,473,462 | 5,078,503 | 4,909,916 |
| **Non-Operating:** | | | | | | | | | |
| Cash balances - Sold/Closed stores | - | - | - | - | 116,950 | - | - | - | - |
| Proceeds from Sale of Inventory | - | - | 768,132 | 768,132 | 768,132 | 768,132 | - | - | - |
| Proceeds from Sale of Equipment | - | - | - | - | 666,896 | 666,896 | - | - | - |
| Proceeds from Sale of Real Estate (net) | - | - | - | - | 1,050,108 | 1,050,108 | - | - | - |
| Total Non-Operating | - | - | 768,132 | 768,132 | 2,602,086 | 2,485,136 | - | - | - |
| **Total Receipts** | 4,830,901 | 5,614,582 | 6,350,891 | 6,423,290 | 7,756,319 | 7,762,487 | 5,473,462 | 5,078,503 | 4,909,916 |
| **CASH DISBURSEMENTS:** | | | | | | | | | |
| **Operating:** | | | | | | | | | |
| Inventory purchases - Market | (3,379,525) | (3,903,323) | (3,836,880) | (3,953,827) | (3,602,827) | (3,681,452) | (3,775,046) | (3,563,786) | (3,445,249) |
| Salaries & Benefits - Market | (2,165,319) | - | (1,728,547) | - | (1,728,547) | - | (1,677,567) | - | (1,677,567) |
| Payment of accrued liabilities | - | - | (128,764) | (128,764) | (128,764) | (128,764) | - | - | - |
| Operating Expenses - Market | (427,586) | (394,120) | (1,075,785) | (399,219) | (363,779) | (349,155) | (966,639) | (337,996) | (326,754) |
| Operating Expenses - Corporate | (265,809) | (72,893) | (270,473) | (73,836) | (266,102) | (65,869) | (266,364) | (63,764) | (260,463) |
| Total Operating | (6,238,239) | (4,370,336) | (6,911,685) | (4,555,646) | (6,090,019) | (4,225,241) | (6,685,617) | (3,965,545) | (5,710,033) |
| **Non-Operating:** | | | | | | | | | |
| Operating Expenses - Corporate Prof Fees | - | (365,000) | - | - | - | (55,000) | - | - | - |
| Operating Expenses - Lender Prof Fees | - | (457,600) | - | - | - | - | - | - | - |
| PACA Payments | - | - | - | - | - | - | - | - | - |
| Debt principal payments | - | - | (567,066) | (384,066) | (2,101,070) | (1,526,518) | (538,133) | - | - |
| Debt interest payments | - | - | (161,844) | - | - | - | (134,256) | - | - |
| Capital Expenditures | (62,500) | (62,500) | (62,500) | (62,500) | (62,500) | (62,500) | (62,500) | (62,500) | (62,500) |
| Store Closing costs | - | - | - | - | - | - | - | - | - |
| Deposits - Utilities | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | (25,000) | - |
| Total Non-Operating | (62,500) | (885,100) | (791,410) | (446,566) | (2,163,570) | (1,644,018) | (734,888) | (87,500) | (62,500) |
| **Total Disbursements** | (6,300,739) | (5,255,436) | (7,703,095) | (5,002,212) | (8,253,589) | (5,869,259) | (7,420,505) | (4,053,045) | (5,772,533) |
| **NET CASH INFLOW/(OUTFLOW)** | (1,469,838) | 359,146 | (1,352,204) | 1,421,077 | (497,270) | 1,893,227 | (1,947,042) | 1,025,458 | (862,616) |

DIP Loan v14

CONFIDENTIAL DRAFT 11/21/2013

EXHIBIT 1
Page 3 of 6

# C&K Market, Inc.

Cash Flow Forecast
CK Projection DIP Loan v14
11/21/2013

| | Week 10 | Week 11 | Week 12 | Week 13 | Week 14 | Week 15 | Week 16 | Week 17 | Week 18 |
|---|---|---|---|---|---|---|---|---|---|
| | 1/26/14 | 2/2/14 | 2/9/14 | 2/16/14 | 2/23/14 | 3/2/14 | 3/9/14 | 3/16/14 | 3/23/14 |
| **REVOLVER LOAN BALANCE:** | | | | | | | | | |
| Projected Beginning Revolver Balance | 8,487,123 | 8,487,123 | 8,511,963 | 8,511,963 | 8,511,963 | 8,511,963 | 6,739,131 | 6,739,131 | 6,739,131 |
| Borrowing (Payment) on revolver | 1,469,838 | (359,146) | 1,352,204 | (1,421,077) | 497,270 | (1,893,227) | 1,947,042 | (1,025,458) | 862,616 |
| Less: Cash Balance-market (sold/closed stores) | | | | | | | | | |
| Less: DIP (Borrowings) Payments | (1,469,838) | 383,986 | (1,352,204) | 1,421,077 | (497,270) | 120,396 | (1,947,042) | 1,025,458 | (862,616) |
| **Projected Ending Revolver Balance** | 8,487,123 | 8,511,963 | 8,511,963 | 8,511,963 | 8,511,963 | 6,739,131 | 6,739,131 | 6,739,131 | 6,739,131 |
| | | | | | | | | | |
| DIP Beginning Balance | 6,891,557 | 8,361,396 | 7,977,410 | 9,329,614 | 7,908,537 | 8,405,807 | 8,285,411 | 10,232,453 | 9,206,996 |
| DIP Borrowing (Repayment) | 1,469,838 | (383,986) | 1,352,204 | (1,421,077) | 497,270 | (120,396) | 1,947,042 | (1,025,458) | 862,616 |
| **DIP Ending Balance** | 8,361,396 | 7,977,410 | 9,329,614 | 7,908,537 | 8,405,807 | 8,285,411 | 10,232,453 | 9,206,996 | 10,069,612 |
| | | | | | | | | | |
| **Total DIP Borrowing** | 16,848,519 | 16,489,373 | 17,841,577 | 16,420,500 | 16,917,770 | 15,024,542 | 16,971,585 | 15,946,127 | 16,808,744 |
| | | | | | | | | | |
| Availability before $4 million cap | 3,638,604 | 4,022,590 | 2,670,386 | 4,091,463 | 3,594,193 | 3,714,589 | 1,767,547 | 2,793,004 | 1,930,388 |
| **Maximum Availability** | 3,638,604 | 4,000,000 | 2,670,386 | 4,000,000 | 3,594,193 | 3,714,589 | 1,767,547 | 2,793,004 | 1,930,388 |
| | | | | | | | | | |
| **Borrowing Base:** | | | | | | | | | |
| Credit Card Receivables | 1,488,000 | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 |
| Inventory: Non-Perishable | 7,077,197 | 7,077,197 | 7,077,197 | 7,077,197 | 7,077,197 | 5,875,300 | 5,875,300 | 5,875,300 | 5,875,300 |
| Inventory: Liquor, Beer, Wine | 1,203,900 | 1,203,900 | 1,203,900 | 1,203,900 | 1,203,900 | 999,446 | 999,446 | 999,446 | 999,446 |
| Inventory: Perishable | 2,157,964 | 2,157,964 | 2,157,964 | 2,157,964 | 2,157,964 | 1,791,484 | 1,791,484 | 1,791,484 | 1,791,484 |
| PACA | (1,200,000) | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) |
| Money Order/Western Union | (536,400) | (482,760) | (482,760) | (482,760) | (482,760) | (482,760) | (482,760) | (482,760) | (482,760) |
| Loyalty Card | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) | (269,025) |
| LOC | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) |
| Gift Cards | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) | (134,513) |
| Rent Reserve | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) |
| **Total Borrowing Base** | 8,487,123 | 8,511,963 | 8,511,963 | 8,511,963 | 8,511,963 | 6,739,131 | 6,739,131 | 6,739,131 | 6,739,131 |
| **DIP Commitment Amount** | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 |
| **DIP Facility** | 20,487,123 | 20,511,963 | 20,511,963 | 20,511,963 | 20,511,963 | 18,739,131 | 18,739,131 | 18,739,131 | 18,739,131 |

# C&K Market, Inc.

Cash Flow Forecast
CK Projection DIP Loan v14
11/21/2013

| | Week 19 3/30/14 | Week 20 4/6/14 | Week 21 4/13/14 | Week 22 4/20/14 | Week 23 4/27/14 | Week 24 5/4/14 | Check Total |
|---|---|---|---|---|---|---|---|
| **Cash - Beginning of week** | | | | | | | - |
| **CASH RECEIPTS:** | | | | | | | |
| **Operating:** | | | | | | | |
| Sales - Market | 5,290,666 | 5,349,169 | 5,138,840 | 4,932,749 | 5,023,966 | 5,083,899 | 128,875,374 |
| Other | 10,000 | 44,000 | 107,000 | 12,500 | 12,500 | 44,000 | 936,500 |
| Total Operating | 5,300,666 | 5,393,169 | 5,245,840 | 4,945,249 | 5,036,466 | 5,127,899 | 129,811,874 |
| **Non-Operating:** | | | | | | | |
| Cash balances - Sold/Closed stores | - | - | - | - | - | - | 394,760 |
| Proceeds from Sale of Inventory | - | - | - | - | - | - | 8,503,810 |
| Proceeds from Sale of Equipment | - | - | - | - | - | - | 3,383,910 |
| Proceeds from Sale of Real Estate (net) | - | - | - | - | - | - | 2,100,216 |
| Total Non-Operating | - | - | - | - | - | - | 14,382,696 |
| **Total Receipts** | 5,300,666 | 5,393,169 | 5,245,840 | 4,945,249 | 5,036,466 | 5,127,899 | 144,194,570 |
| **CASH DISBURSEMENTS:** | | | | | | | |
| **Operating:** | | | | | | | |
| Inventory purchases - Market | (3,719,994) | (3,758,912) | (3,611,112) | (3,466,290) | (3,530,389) | (3,572,505) | (90,747,028) |
| Salaries & Benefits - Market | | (1,628,694) | | (1,628,694) | | (1,794,358) | (23,295,508) |
| Payment of accrued liabilities | | | | | | | (1,244,720) |
| Operating Expenses - Market | (352,811) | (357,319) | (952,112) | (329,503) | (335,596) | (335,058) | (13,953,117) |
| Operating Expenses - Corporate | (66,558) | (269,150) | (67,564) | (263,675) | (66,054) | (237,401) | (4,273,097) |
| Total Operating | (4,139,364) | (6,014,075) | (4,630,788) | (5,688,161) | (3,932,039) | (5,939,322) | (133,513,470) |
| **Non-Operating:** | | | | | | | |
| Operating Expenses - Corporate Prof Fees | | (25,000) | | | | (25,000) | (1,030,000) |
| Operating Expenses - Lender Prof Fees | | | | | | (448,800) | (906,400) |
| PACA Payments | | | | | | | (1,600,000) |
| Debt principal payments | | (74,459) | (108,226) | | | (74,459) | (7,790,517) |
| Debt interest payments | | (101,669) | (58,806) | | | (27,759) | (836,159) |
| Capital Expenditures | (62,500) | (62,500) | (62,500) | (62,500) | (62,500) | (62,500) | (1,272,883) |
| Store Closing costs | | | | | | | (520,000) |
| Deposits - Utilities | | | | | | | (1,000,000) |
| Other | | | | | | | (50,000) |
| Total Non-Operating | (62,500) | (263,628) | (229,532) | (62,500) | (62,500) | (638,518) | (15,005,959) |
| **Total Disbursements** | (4,201,864) | (6,277,704) | (4,860,320) | (5,750,661) | (3,994,539) | (6,577,840) | (148,519,430) |
| **NET CASH INFLOW/(OUTFLOW)** | 1,098,803 | (884,535) | 385,520 | (805,413) | 1,041,927 | (1,449,940) | (4,324,860) |

# C&K Market, Inc.
**Cash Flow Forecast**
CK Projection DIP Loan v14
11/21/2013

| | Week 19 3/30/14 | Week 20 4/6/14 | Week 21 4/13/14 | Week 22 4/20/14 | Week 23 4/27/14 | Week 24 5/4/14 | Check Total |
|---|---|---|---|---|---|---|---|
| **REVOLVER LOAN BALANCE:** | | | | | | | |
| Projected Beginning Revolver Balance | 6,739,131 | 6,739,131 | 6,779,485 | 6,779,485 | 6,779,485 | 6,779,485 | |
| Borrowing (Payment) on revolver | (1,098,803) | 884,535 | (385,520) | 805,413 | (1,041,927) | 1,449,940 | |
| Less: Cash Balance-market (sold/closed stores) | | | | | | | |
| Less: DIP (Borrowings) Payments | 1,098,803 | (844,181) | 385,520 | (805,413) | 1,041,927 | (1,449,940) | |
| **Projected Ending Revolver Balance** | 6,739,131 | 6,779,485 | 6,779,485 | 6,779,485 | 6,779,485 | 6,779,485 | |
| | | | | | | | |
| DIP Beginning Balance | 10,069,612 | 8,970,810 | 9,814,991 | 9,429,470 | 10,234,883 | 9,192,956 | |
| DIP Borrowing (Repayment) | (1,098,803) | 844,181 | (385,520) | 805,413 | (1,041,927) | 1,449,940 | |
| **DIP Ending Balance** | 8,970,810 | 9,814,991 | 9,429,470 | 10,234,883 | 9,192,956 | 10,642,897 | |
| | | | | | | | |
| **Total DIP Borrowing** | 15,709,941 | 16,594,476 | 16,208,955 | 17,014,368 | 15,972,442 | 17,422,382 | |
| | | | | | | | |
| Availability before $4 million cap | 3,029,190 | 2,185,009 | 2,570,530 | 1,765,117 | 2,807,044 | 1,357,103 | |
| Maximum Availability | 3,029,190 | 2,185,009 | 2,570,530 | 1,765,117 | 2,807,044 | 1,357,103 | |
| | | | | | | | |
| **Borrowing Base:** | | | | | | | |
| Credit Card Receivables | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 | 1,339,200 | |
| Inventory: Non-Perishable | 5,875,300 | 5,875,300 | 5,875,300 | 5,875,300 | 5,875,300 | 5,875,300 | |
| Inventory: Liquor, Beer, Wine | 999,446 | 999,446 | 999,446 | 999,446 | 999,446 | 999,446 | |
| Inventory: Perishable | 1,791,484 | 1,791,484 | 1,791,484 | 1,791,484 | 1,791,484 | 1,791,484 | |
| PACA | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) | (1,080,000) | |
| Money Order/Western Union | (482,760) | (482,760) | (482,760) | (482,760) | (482,760) | (482,760) | |
| Loyalty Card | (269,025) | (242,123) | (242,123) | (242,123) | (242,123) | (242,123) | |
| LOC | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | (1,250,000) | |
| Gift Cards | (121,061) | (121,061) | (121,061) | (121,061) | (121,061) | (121,061) | |
| Rent Reserve | (134,513) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | |
| **Total Borrowing Base** | 6,739,131 | 6,779,485 | 6,779,485 | 6,779,485 | 6,779,485 | 6,779,485 | |
| DIP Commitment Amount | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | |
| DIP Facility | 18,739,131 | 18,779,485 | 18,779,485 | 18,779,485 | 18,779,485 | 18,779,485 | |

DIP Loan v14

## <u>LIST OF INTERESTED PARTIES</u>

### *In re C & K Market, Inc.*
### U.S. Bankruptcy Court Case No. 13-64561-fra11

### ECF PARTICIPANTS

- RICHARD T ANDERSON rick@andersonmonson.com, lisa@andersonmonson.com
- TIMOTHY J CONWAY tim.conway@tonkon.com, nancy.kennedy@tonkon.com
- BRADLEY S COPELAND bcopeland@agsprp.com, bdavis@agsprp.com
- MICHAEL W FLETCHER michael.fletcher@tonkon.com, leslie.hurd@tonkon.com;andy.haro@tonkon.com
- DAVID A FORAKER david.foraker@greenemarkley.com, joyce.chartrand@greenemarkley.com
- THOMAS A HUNTSBERGER tom@tahpc.com
- GREGG D JOHNSON gdj@aterwynne.com, jmh@aterwynne.com
- ROBERT B KAPLAN rbk@jmbm.com
- ALBERT N KENNEDY al.kennedy@tonkon.com, leslie.hurd@tonkon.com;andy.haro@tonkon.com
- JEFFREY C MISLEY jeffm@sussmanshank.com, ecf.jeffrey.misley@sussmanshank.com
- WILSON C MUHLHEIM scooke@luvaascobb.com
- TERESA H PEARSON teresa.pearson@millernash.com, lisa.conrad@millernash.com;brenda.hale@millernash.com
- DAVID L POLLACK pollack@ballardspahr.com
- AVA L SCHOEN ava.schoen@tonkon.com, larissa.stec@tonkon.com
- US Trustee, Eugene USTPRegion18.EG.ECF@usdoj.gov
- DAVID P WEINER david.weiner@greenemarkley.com

### NON-ECF PARTICIPANTS

**SECURED CREDITORS**

Banc of America
  Leasing & Capital LLC
2059 Northlake Parkway 4 South
Tucker, GA 30084

Dell Financial Services LLC
Mail Stop-PS2DF-23
One Dell Way
Round Rock, TX 78682

James D. Gillespie
28274 S. Fork Rd.
Dayville, OR 97825

Greatway Center Property LLC
8816 E. Evans Creeks
Rogue River, OR 97537

Green & Frahm
941 Delsie Dr.
Grants Pass, OR 97527

Komlofske Corp.
1535 E. 3rd St.
Prineville, OR 97754

Ken and Lynda Martin
80380 Torreon Way
La Quinta, CA 92253

Protective Life
2801 Highway 280 South
Birmingham, AL 35202

**TOP 20 UNSECURED CREDITORS**

Western Boxed Meat Inc.
2401 NE Argyle St.
Portland, OR 97211

Umpqua Dairy Products
333 SE Sykes
Roseburg, OR 97470

Umpqua Dairy Products
c/o Dan W. Clark
Dole, Colewell, Clark, et al
POB 1205
Roseburg, OR 97470

Bigfoot Beverages
86776 McVay Hwy.
Eugene, OR 97405

Core-Mark Intl
395 Oyster Point Blvd., #415
So. San Francisco, CA 94080

VPD IV Inc.
6051 S Watt Ave.
Sacramento, CA 95829

J B Hunt
File #98545
615 J.B. Hunt Corporate Dr.
Lowell, AR 97245

Komlofske Corp.
1535 E. 3rd St.
Prineville, OR 97754

Tarks, Inc.
3752 Colver Rd.
Phoenix, OR 97535

Willamina Foods, LLC
8630 SW Scholls Ferry Rd.
Beaverton, OR 97008

Marc and Charlotte Gould
5494 Goodrich Hwy.
Oakland, OR 97462

Marc and Charlotte Gould
c/o Raymond M. Ramsay
Ramsay & Stein PC
4285 Commercial St SE #140
Salem, OR 97302

S and J Reed, Inc.
c/o Steve Reed
2100 Pine Gate Way
White City, OR 97503

Nor-Cal Produce Inc.
2995 Oates St.
West Sacramento, CA 95691

The News Group
3995 70th Ave. E #B
Fife, WA 98424-1126

Pacific Power & Light Co.
1033 NE 6th Ave.
Portland, OR 95256-9199

Coca Cola Bottling Company
15333 SW Sequoia Pkwy.
Portland, OR 97224

Reser's Fine Foods Inc.
15570 SW Jenkins Rd.
Beaverton, OR 97006

034518/00017/5089596v1